**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Trisha Ochsner,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-20-01683-PHX-JJT<br><br>**ORDER** |

Plaintiff Trisha Ochsner challenges the denial of her Application for Supplemental Security Income under the Social Security Act ("the Act") by Defendant, the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 21, Pl. Br.), Defendant's Response Brief (Doc. 22, Def. Br.), and Plaintiff's Reply. (Doc. 23, Reply.) The Court has reviewed the briefs and Administrative Record. (Doc. 20, AR.) The Court reverses the Administrative Law Judge's ("ALJ") decision and remands for further proceedings consistent with this opinion.

**I.    BACKGROUND**

Plaintiff filed an application for Supplemental Security Income on November 15, 2016, for a period of disability benefits beginning on May 1, 2007, her alleged onset date. (AR. 177-82.) After a hearing on August 13, 2019 (AR. at 40-65), ALJ Matthew C. Dawson

1  issued a written decision denying Plaintiff's claim on September 5, 2019. (AR. at 18-36.)
2  The Social Security Appeals Council upheld the ALJ's denial in a letter dated June 23,
3  2020 (AR. at 1-5), and Plaintiff sought judicial review on August 27, 2020. (Doc. 1.)

4  The Court has reviewed the medical evidence in its entirety. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. The ALJ evaluated Plaintiff's disability based on the following severe impairments: headaches, cervical degenerative disc disease, lumbar scoliosis and spurring, and osteoarthritis of the hand. (AR. at 21.) The ALJ concluded several other impairments, including temporomandibular joint ("TMJ") dysfunction, a visual impairment, anxiety disorder, and depressive disorder were non-severe. (AR at 21-24.) The ALJ found several more impairments—epilepsy, fibromyalgia, and West Nile Virus or West Nile Meningitis—were not "medically determinable impairments due to a lack of objective evidence." (AR. at 23.) The ALJ found Plaintiff limited to "medium work," as defined in federal regulations, with additional limitations to frequent handling, fingering, feeling, balancing, stooping, kneeling, crouching, and climbing ramps or stairs; occasional crawling; never climbing ladders, ropes, or scaffolds; and no exposure to unprotected heights or moving mechanical parts. (AR. at 26.) Based on the vocational expert's testimony, the ALJ concluded Plaintiff could perform several unskilled jobs. (AR. at 30.)

**II.     LEGAL STANDARD**

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's

conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 406.920(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the analysis proceeds to step four, where the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. *Id*. If she cannot, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on her RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). If she cannot, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff presents two issues for the Court's consideration: (1) "The ALJ's RFC determination is not supported by substantial evidence because he rejected the opinion of Dr. Bugola and Dr. Coleman"; and (2) "The ALJ's Step 2 determination is not supported by substantial evidence because he failed to evaluate fibromyalgia pursuant to [Social Security Ruling] 12-2p."[1]

---

[1] To the extent Plaintiff is arguing in her Reply that the ALJ failed to cite clear, convincing reasons for rejecting Plaintiff's symptom testimony, the issue is waived because Plaintiff did not address it in her Opening Brief. *See Bray v. Comm'r of Soc, Sec. Admin.*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009.)

**A.     The ALJ did not err by rejecting the opinions of Drs. Bugola and Coleman.**

Plaintiff argues the ALJ erred by rejecting the opinions of Drs. Bugola and Coleman and, instead, inventing an RFC that has no basis in the record. (Pl. Br. at 9, stating "It is important to note that there is no medical opinion finding Plaintiff to have a medium RFC.") Because Plaintiff's first issue necessarily involves an analysis of the ALJ's stated reasons for rejecting these opinions, the Court addresses each opinion cited by Plaintiff, in turn.

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).[2] Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citations omitted). "Where such an opinion is contradicted, however, it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Id.* (citations omitted). "The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (internal citations omitted); *Buck v. Comm'r of Soc. Sec. Admin.*, 2021 WL 3508639, at *4 (D. Ariz. Aug. 10, 2021) (citing *Sousa*).

Importantly, it is the province of the ALJ to resolve conflicts and ambiguities in the record, and to "interpret[] terms and phrases used by physicians in their opinions." *Frigon v. Acting Comm'r of Soc. Sec. Admin.*, 2019 WL 2912498, at *4 (D. Ariz. July 8, 2019)

---

[2] The Court recognizes Plaintiff filed this Title XVI claim in November 2016, well before the effective date of new regulations pertaining to the evaluation of opinion evidence. 20 C.F.R. § 416.920c. As such, the previous regulatory scheme delineated in 20 C.F.R. § 416.927 applies.

- 4 -

(citing *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995)); *see Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record."). Consequently, the ALJ need not adopt, verbatim, the specific work restrictions or limitations any physician or medical provider assigns, only those supported by substantial evidence. *Id.*; *Magallanes v. Bowen*, 881 F.2d 747, 756 -57 (9th Cir. 1989) ("The limitation of evidence in a hypothetical question is objectionable only if the assumed facts could not be supported by the record.") (internal quotations and citations omitted).

### 1. The non-examining physician, Dr. Alan Coleman.

On September 10, 2017, consulting internist, Dr. Alan Coleman, reviewed Plaintiff's medical file at the behest of the state's Disability Determination Services. (AR. at 86-99.) He opined Plaintiff was physically limited to the following restrictions and limitations: occasional lifting and/or carrying weights up to 20 pounds; frequent lifting and/or carrying weights up to 10 pounds; standing, walking, and sitting with normal breaks for a period of "[a]bout 6 hours in an 8-hour workday"; pushing and pulling objects within the above-mentioned weight restrictions; frequent climbing of ramps or stairs, balancing, stooping, kneeling, and crouching; occasional crawling; and never climbing ladders, ropes, or scaffolds. (AR. at 98-99.) At the hearing, the vocational expert ("VE") testified a hypothetical individual with those limitations could perform light jobs. (AR. at 58-59.)

In the unfavorable decision, the ALJ assigned "great weight" to Dr. Coleman's opinion "insofar as he indicated that the claimant [has postural and environmental limitations]," but "little weight" to the conclusion Plaintiff could perform light exertional work. (AR. at 28.) The ALJ explained Dr. Coleman "did not have access to the entire medical record," and that his "exertional limitation [to light work] is inconsistent with the objective medical evidence as a whole . . . ." (AR. at 28.) The ALJ opined "the medical evidence shows little change between the initial and reconsideration decisions below," and the "lack of consensus" between Drs. Cunningham, Coleman, and Griffith "strongly undermine[s]" adopting any of their opinions. (AR. at 28.) The ALJ noted their opinions

1    were "drastically different," despite "little change in the evidence as noted between the
2    dates when those doctors gave their opinions." (AR. at 28.)
3        Aside from summarily stating the ALJ erred by rejecting Dr. Coleman's opinion,
4    Plaintiff provides little substantive argument to support that position. Plaintiff, instead,
5    focuses on the other opinions of record, asserting for various reasons that it was error for
6    the ALJ to rely on Dr. Keith Cunningham's findings (the first consultative examiner) or
7    Dr. Griffith's opinion (the non-examining state agency physician at the initial level of
8    review).[3] (Pl. Br. at 13.) Plaintiff does contend, however, that Dr. Griffith examined only
9    "limited treatment notes" compared to Dr. Coleman and states, "[I]t is clear that the amount
10   of evidence considered definitely changed between initial review [with Dr. Griffith] and
11   reconsideration [with Dr. Coleman]." (Pl. Br. at 15.)
12       Defendant responds that the ALJ's RFC determination is supported by substantial
13   evidence, including the examination findings of Drs. Bugola and Cunningham, Plaintiff's
14   reported daily activities, her treatment history, and her lack of compliance regarding her
15   use of marijuana. (D. Br. at 9-10.) Defendant notes the ALJ was not required to adopt any
16   particular medical opinion verbatim, and that "evaluating conflicts in the medical evidence
17   is the sole province of the ALJ . . . ." (D. Br. at 11-12.)
18       Plaintiff replies an ALJ's failure to explicitly reject, or provide specific, legitimate
19   reasons for crediting one medical opinion over another, is error. (Reply at 4.) Plaintiff also
20   believes, "Defendant failed to address Plaintiff's arguments regarding the weight given to
21   Dr. Coleman's opinion and has therefore acquiesced that the ALJ has failed to properly

---

[3] Here, the ALJ need not wholly reject the opinion of Dr. Cunningham, contrary to Plaintiff's argument, due to his failure to include certain examination results or follow other vague protocols. (Pl. Br. 12-14.) Plaintiff's citation to a Social Security website purporting to establish "guidelines to provide minimum content for CE reports for adult claimants," does not appear to be binding on this Court or the Administration. *See, e.g.*, Consultative Examinations: A Guide for Health Professionals, Part IV—Adult Physical Consultative Examination (CE) Report Content, https://www.ssa.gov/disability/professionals/greenbook/ce-adult.htm#Neurological. This Court follows federal regulation 20 C.F.R. § 416.927 (which applies to Title XVI claims for benefits filed before March 27, 2017, as is the case here), setting forth the factors for the ALJ to evaluate when considering the weight to give a medical opinion. These include supportability, consistency, specialization, and others. *Id.* at (c)(3)-(6).

evaluate this opinion." (Reply at 5.) Plaintiff argued Defendant has "acquiesced to" the merit of Plaintiff's argument regarding Dr. Coleman. (Reply at 5.)

At the outset, the Court notes the ALJ assigned only "little weight" to Dr. Cunningham and "partial weight" to Dr. Griffith generally. (AR. at 28-29.) The ALJ was explicit in his decision not to rely upon or adopt any specific opinion evidence. (AR. at 28, stating "As for the opinion evidence, no single assessment was adopted.") Consequently, it is unclear why Plaintiff spends an inordinate number of pages rebutting the opinions of physicians the ALJ never fully relied upon. (Pl. Br. at 12-15.) The Court also declines to accept Plaintiff's position that Defendant "acquiesced" to the Plaintiff's argument regarding Dr. Coleman by failing to address it. (Reply at 5.) Defendant construed Plaintiff's argument, generally, as an attempt to persuade the Court to "reinterpret the totality of the medical evidence and reject the ALJ's interpretation in favor of [Plaintiff's] preferred result." (D. Br. at 12.) Defendant does not ignore Plaintiff's argument regarding Dr. Coleman, which Plaintiff herself barely addressed.

Regarding Dr. Coleman, the ALJ cited the conflicting opinions of other physicians of record, noted Dr. Coleman did not have the full medical file, stated his restrictions are "inconsistent with the objective medical evidence as a whole," and opined that the medical evidence belies his opinions. (AR. at 28.) To justify rejecting the opinion of a non-examining physician, the ALJ need only point to specific evidence in the record contradicting that physician's opinion. *Sousa*, 143 F.3d at 1244. While the ALJ failed to cite specific treatment notes to support his conclusion that Dr. Coleman's opinion was generally inconsistent with the medical record, the ALJ did note "the lack of consensus" between Dr. Coleman and other physicians under these circumstances "strongly undermine[s]" adopting any of their opinions. (AR. at 28.) That conflict in the medical opinions constitutes a sufficient reason to reject Dr. Coleman's opinion. *Id.*; *accord, e.g.*, *Clark v. Colvin*, 2013 WL 6189726, at *3 (W.D. Wash. Nov. 26, 2013) (report and recommendation adopted) (noting conflicting opinion of examining doctor is sufficient to

- 7 -

justify rejection of non-examining doctor.). The ALJ did not err in rejecting Dr. Coleman's opinion.

### 2. The examining physician, Dr. Michael Bugola.

On August 14, 2017, consultative examiner Michael Bugola, M.D., interviewed and examined Plaintiff at the behest of the state's Disability Determination Services. (AR. at 331-39.) Dr. Bugola assigned to Plaintiff limitations consistent with light work (AR. at 336-38), which Plaintiff argues necessitates a finding of disability as of her 55th birthday.[4] (Pl. Br. at 16.) The ALJ assigned this opinion only "little weight," noting that "with the exception of [Plaintiff's] reduced cervical and lumbar range of motion, *the restrictions proposed by Dr. Bugola are completely inconsistent with his own physical examination of the claimant which showed virtually no functional problems*." (AR. at 29) (emphasis in original.) In support, the ALJ generally referred to the three pages of the doctor's report containing his examination results. (AR. at 29.) The ALJ also noted, however, that the limitations Dr. Bugola assigned "are inconsistent with the conservative therapies and treatments sought by [Plaintiff]."[5] (AR. at 29.)

The ALJ needed only specific, legitimate reasons supported by substantial evidence for rejecting Dr. Bugola's opinion as it is contradicted in the record by another consultative examiner and a non-examining consultant. (AR. at 78-80, 300-304.) That an examiner's conclusions are inconsistent with his examination notes is a specific, legitimate reason for rejecting that examiner's opinion when that rationale is properly supported in the record. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194 (9th Cir. 2008) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)) ("An ALJ may reject an examining physician's

---

[4] The Court declines to accept Plaintiff's argument that Dr. Bugola's opinion is most consistent with sedentary work. (Pl. Br. at 9.) Dr. Bugola opined Plaintiff capable of standing or walking anywhere from six-to-eight hours in an eight-hour day and lifting weights up to 20 pounds occasionally. (AR. at 337.) Dr. Bugola noted Plaintiff's use of a cane, but also that it was not medically necessary. (AR. at 337.) The RFC Dr. Bugola assigned is most consistent with light work. *See* 20 C.F.R. § 416.967(b).

[5] Elsewhere in the decision, the ALJ asserted several of Plaintiff's impairments are "controlled with routine, conservative treatment." (AR. at 26-28.)

- 8 -

opinion if it is contradicted by clinical evidence."); *see Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider.") (internal citations omitted).

Referring to the excerpt of the report cited by the ALJ, Dr. Bugola documented that Plaintiff appeared in "no acute distress" with a normal gait and the ability to rise to a standing position (and vice versa) without assistance. (AR. at 333.) Dr. Bugola documented "no focal neurological deficits"; full active and passive range of motion in both upper extremities with normal muscle bulk; normal fine motor skills; and normal lower extremity strength and muscle bulk. (AR. at 334.) The Court acknowledges Dr. Bugola detailed "multiple trigger points" and a few other positive clinical findings upon examination (AR. at 335), but "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citations omitted.) The Court finds the ALJ's reasons to be legally sufficient and supported by substantial evidence.

### 3. The ALJ's medium RFC.

Regarding the ALJ's RFC generally, it is not error for an ALJ to assign limitations consistent with what is supported by the record. *Bayliss*, 427 F.3d at 1217. Plaintiff attempts to rebut the ALJ by noting he "discounted *all* opinion evidence . . . [and] substituted his own conclusory opinion which contradicted the record as a whole." (Reply at 5.) But the Court notes the ALJ's RFC determination is not the least restrictive of RFCs in this record, as two other physicians opined Plaintiff had no exertional limitations at all (AR. at 79-80, 300-304), and it is the ALJ's duty to evaluate the medical evidence, resolve conflicts and ambiguities in the record and determine a claimant's RFC. *See Tommasetti*, 533 F.3d at 1041. Further, and as the Court previously stated, the RFC need not match any particular medical source opinion because it is a legal determination. 20 C.F.R. §§ 416.927(d)(2), 416.945, 404.946(c). Importantly, the ALJ cited other factors, beyond the opinion evidence, to explain his RFC determination. (AR. at 28.) In this case, however,

and as explained in further detail below, the ALJ's failure to evaluate Plaintiff's fibromyalgia using the criteria adopted in Social Security Ruling ("SSR") 12-2p may have resulted in an RFC determination that does not properly account for all of Plaintiff's medically determinable impairments. Consequently, the Court will remand.

### B. The ALJ erred by failing to apply SSR 12-2p.

At step two of the sequential evaluation process, the ALJ concluded Plaintiff's fibromyalgia was not a medically determinable impairment. (AR. at 23-24.) In support, the ALJ cited only Dr. Cunningham's March 2, 2017 report stating Plaintiff exhibited no trigger points indicative of fibromyalgia. (AR. at 301.)

Plaintiff argues this conclusion is not supported by substantial evidence and that the ALJ failed to "properly evaluate Plaintiff's fibromyalgia pursuant to SSR 12-2p." (Pl. Br. at 17.) Plaintiff contends, "The ALJ completely ignored the evidence of Dr. Bugola's objective findings consistent with fibromyalgia and failed to conduct a proper review under SSR 12-2p." (Pl. Br. at 19.) Plaintiff believes the ALJ's "RFC did not incorporate all of the limitations that were supported by substantial evidence" because the ALJ failed to properly account for Plaintiff's fibromyalgia. (Pl. Br. at 19.)

Under SSR 12-2p, the Social Security Administration recognizes that the symptoms of fibromyalgia "wax and wane" and warns that an analysis of RFC in such cases should consider "a longitudinal record whenever possible." SSR 12-2P, 2012 WL 3104869 at *6; *Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017). "SSRs do not carry the force of law, but they are binding on ALJs nonetheless." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009) (internal quotations and citations omitted). The Courts "defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the Act or regulations." *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

The Court agrees the ALJ failed to properly examine Plaintiff's fibromyalgia using the framework adopted in SSR 12-2p. The ALJ cited a single poorly documented examination to support his conclusion Plaintiff's fibromyalgia was not medically determinable (AR. at 24), but the record contains evidence of fibromyalgia symptoms

elsewhere, including (as Plaintiff points out) Dr. Bugola's examination notes. (AR. at 335.) The ALJ simply did not explain why Dr. Cunningham's examination, which showed no tender points at all, should outweigh Dr. Bugola's, which documented several. (AR. at 24.) The Court also notes Plaintiff exhibited pain to palpation of numerous points about the head and neck area while receiving treatment from a non-physician TMJ specialist in April 2018, some of which may be consistent with the ACR criteria. (AR. at 550.) Plaintiff also appeared to exhibit positive tender points upon examination on multiple occasions with pain management providers in 2017 (AR. at 358, 364, 369-70), and different chiropractors in October 2018.[6] (AR. at 523, 527.) The ALJ discussed none of this evidence in his analysis of Plaintiff's fibromyalgia at step two. (AR. at 24.) While the Court does not endeavor to re-weigh this evidence or even conclude Plaintiff's fibromyalgia is, in fact, medically determinable, these examination notes underscore the deficiency in the ALJ's analysis. The ALJ cannot cherry-pick from the record. *Garrison v. Colvin*, 759 F.3d 995, 1017 n. 23 (9th Cir. 2014). Here, the ALJ cited the opinion that supported his conclusion and ignored the opinion that did not. (AR. at 24.)

Defendant counters that Plaintiff is incapable of proving fibromyalgia is medically determinable on this record even if the ALJ applied the correct standards under SSR 12-2p.[7] (D. Br. at 12-15.) Essentially, Defendant argues any failure by the ALJ to properly

---

[6] The Court acknowledges that only a licensed physician can provide evidence sufficient to establish a medically determinable impairment of fibromyalgia under 12-2p. SSR 12-2p, at *2. But Dr. Bugola documented tender points and a diagnosis of fibromyalgia or "probable" fibromyalgia (AR. at 335-36), and SSR 12-2p specifically contemplates the Administration's use of a consultative examination, in certain cases, "to determine if a person has an MDI of [fibromyalgia] or is disabled when we need this information to adjudicate a case." *Id*., at *4. If the ALJ had concluded Plaintiff's fibromyalgia was medically determinable, the ALJ could have considered examinations conducted by other sources. This approach is contemplated in SSR 12-2p. *Id*. at *4. ("We also may consider evidence from medical sources who are not 'acceptable medical sources' to evaluate the severity and functional effects of the impairment(s)."). The Court sees no reason to ignore evidence of the disease from other sources which could conceivably lend weight to Dr. Bugola's opinion, especially in a case such as this where the ALJ's analysis is de minimis.

[7] Of note, Defendant argues Plaintiff is incapable of meeting the threshold for fibromyalgia tender points, as the record does not contain sufficient tender points on examination over the three-month duration required by SSR 12-2p, both above and below

evaluate Plaintiff's fibromyalgia under 12-2p constitutes harmless error. (D. Br. at 12-15.) The Court recognizes, however, that while Defendant may be correct regarding the criteria to establish fibromyalgia delineated in SSR 12-2p, the ALJ's failure to examine or discuss the longitudinal evidence of fibromyalgia in the record runs afoul of 12-2p, and the Court cannot substitute Defendant's analysis of the record for the ALJ's lack of analysis. *Bray*, 554 F.3d at 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.") (internal citations omitted). The ALJ's omission of important evidence from this discussion is not inconsequential to the disability determination because the ALJ need not account for fibromyalgia in his RFC finding if he concludes, as he did here, that it is not medically determinable. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); 20 C.F.R. § 416.945 ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."); SSR 96-8p 1996 WL 374184, at *2 (1996) ("[I]n assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments."). As noted previously, there is meaningful evidence belying the ALJ's conclusion that Plaintiff's fibromyalgia is not medically determinable. While it is not within the Court's province to reweigh evidence, *see Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008), it is to decide whether the ALJ's conclusions are supported by substantial evidence and whether the ALJ applied the appropriate legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (internal citations omitted).

---

the waist. (D. Br. at 13-14.) Defendant also argues there is insufficient evidence to show that Plaintiff's providers ruled out other potential diagnoses, as required by 12-2p. (D. Br. at 14.) Importantly, however, Dr. Bugola documented tender points at the lumbar paraspinal musculature and the "lateral aspect of the hips bilaterally." (AR. at 335.) Additionally, Plaintiff need not satisfy the 11 tender point threshold under the 2010 ACR Preliminary Diagnostic Criteria. SSR 12-2p, at *3. The Court makes no conclusive finding as to whether these facts are sufficient to establish Plaintiff's fibromyalgia as an MDI— only that it bears discussion on remand.

The ALJ's conclusion Plaintiff's fibromyalgia is not medically determinable is not supported by substantial evidence because the ALJ cherry-picked from the record and omitted consideration of important facts.

**IT IS THEREFORE ORDERED** reversing the September 5, 2019 decision of the Administrative Law Judge (AR. at 18-31).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for additional proceedings consistent with this opinion.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 16th day of December, 2021.

Honorable John J. Tuchi
United States District Judge